## RUBSAM CORPORATION et al. v. GENERAL MOTORS CORPORATION et al.

### No. 2907.

District Court, E. D. Michigan, S. D.

Aug. 20, 1931.

Fred Gerlach, of Chicago, Ill., and Whiting, Kleinstiver & Aubrey, of Jackson, Mich., for plaintiffs.

Carlos J. Jolly and Bruce G. Booth, both of Detroit, Mich., and Cooper, Kerr & Dunham, of New York City, for defendants.

SIMONS, District Judge.

This is a patent infringement suit based upon four patents for improvement in vehicle wheels on which demountable rims are used. The patents in suit were all issued to Charles F. Rubsam; the first being patent 1,395,362, issued on November 1, 1921, on an application filed March 9, 1918, and renewed March 19, 1921; the second being patent 1,576,225, issued March 9, 1926, on an application filed March 26, 1924; the third being patent 1,576,226, issued on the same date as the previous patent upon an application filed February 18, 1925; and the fourth patent being 1,622,846, issued March 29, 1927, upon an application filed February 4, 1926, and renewed February 1, 1927. The first patent in suit is the basic one, the remaining three patents being developments and improvements in the basic idea disclosed by the first patent.

Demountable rims were old when Rubsam began his work. The art, however, still presented a problem in respect to obtaining true concentricity between the vehicle wheel and the rim upon which an inflated balloon tire was mounted. Prior to Rubsam, demountable rims were usually made with a diameter somewhat greater than the felloe of the wheel in order that the rim might be easily swung upon the felloe after the insertion of the tire valve. It was then seated upon a flared flange by means of wedging clamps. One of the difficulties to be overcome was the cocking of the rim holding the tire that resulted from the unilateral tightening of the clamps. Rubsam conceived that if a rim of the same or slightly less diameter than the diameter of the felloe could be conveniently mounted upon the felloe, true concentricity might be obtained, and that cocking resulting from unilateral clamping might be avoided. He discovered that when a rim of such diameter was attempted to be swung upon the wheel body after the insertion of the tire valve, that the upper arc of the rim or of its front flange would clear the felloe, but that the side portions below the horizontal center of the rim would strike the felloe and must be spread to pass over the front flange of the wheel body. This spreading could not be accomplished without contracting the lowermost part of the rim so that it could not pass onto the wheel body. He found, however, that a rim with no radial clearance at the front bearing points could be swung onto a wheel body if circumferentially extending clearances were provided between the rim and felloe at the side portions adjacent and below the horizontal center of the wheel. These clearances would permit of contracting or flexing of the rim so that the lower arc having a bearing member could be swung onto the felloe band. This operation has been aptly described as the buttoning of the rim onto the felloe. The concept thus crudely and insufficiently explained constitutes the basis for the first patent in suit.

The second patent is a better development of this basic idea utilized in connection with a wheel embodying a channel felloe with a flared flange at the back, a radial flange at the front, and arcuate bearings between the front felloe flange and the rim. Rubsam further developed his fundamental thought in the first patent in suit by disclosing a felloe with a front radial flange engaged by depressions in the rim, these depressions being arcuate or circumferential, and being properly spaced upon the rim, leaving circumferential clearances in the sense that was disclosed in his first and second patents. The fourth patent in suit further develops the Rubsam idea of arcuate bearings and circumferential clearances, but adds a new element to prevent reversibility. This is accomplished by providing a stud either upon the rim or the felloe which prevents the rim from being put on the felloe, except when the rim is presented to the wheel in the correct position. When so presented the stud will slip into an appropriate slot. When presented in the reverse position the stud will prevent the rim from being mounted.

The validity of all of the patents is challenged on the ground of anticipation and lack of invention, and infringement is denied. The record discloses that on May 4, 1923, a license agreement was entered into between Rubsam, Neracher, and Fritzsche, then owners of all of the patent rights under the first patent in suit, and the General Motors Corporation, one of the defendants. The license specifically included the first patent in suit, which was the only patent that had up to that time been granted, and was to extend to any further patents that might be issued to or acquired by the licensors which the General Motors Corporation might elect to acknowledge as improvements. At the time the license agreement was entered into, the defendants Jaxon Steel Products, Buick Motor Company, and the Chevrolet Motor Company were all subsidiaries of the defendant General Motors Company. It is not disputed that the license agreement of the last-named defendant was for the benefit of all of its subsidiaries, and that they were all privy to the agreement. It is here contended that all of the defendants are estopped from denying the validity of the first patent in suit by the license agreement, and that they are also estopped from denying the validity of the other patents in suit by the adoption of the improvements therein disclosed under circumstances which lead to an inference that their adoption was an exercise of the option reserved by the General Motors Company in the license agreement. In view of the conclusions arrived at in respect to the first three patents in suit, it is unnecessary to dispose of the issue raised by the claim of estoppel. For the same reason it will be unnecessary to pass upon the effect of the patentee's disclaimer filed in the Patent Office subsequent to the termination of the license agreement.

The challenge to the validity of the patents is based upon substantial reference to the prior art. Many, if not all, of the elements of the Rubsam combination are found in the several prior art patents submitted. Nowhere are they found in the same combination to produce the same results that Rubsam achieved. A number of the patentees, principally Baker, were engaged with the problem of securing concentricity, but by none of them was anything accomplished except an approximate concentricity, not a concentricity in a scientific or engineering sense. The Baker patent, No. 1,095,953, is the most pertinent reference. Baker conceived the idea of initially centering the rim before the clamping members are applied. For this purpose he provided studs at spaced intervals between the rim and the felloe. He thought, however, that radial clearance at the studs was necessary in order that the rim might be mounted. The studs were not bearing members, and while they eliminated some of the prior art weaknesses, they did not achieve the results that Rubsam brought about. In my judgment Rubsam was an inventor, and made a new and useful contribution to the vehicle wheel art involving demountable rims. On the present record the first three patents in suit, in so far as the claims therein are sued upon, are valid. With respect to the fourth patent in suit I come to a different conclusion. The only new element disclosed therein is the reversibility preventing stud. I think that this device, once necessity for preventing reversibility, presents itself is perfectly obvious, and does not involve invention. Nothing further need be said about it. My conclusion is that the fourth patent in suit is invalid as lacking invention and novelty.

Infringement of the first three patents in suit is charged as a result of four of the defendants' constructions, two Buick wheels and two Chevrolet wheels. The four constructions are essentially the same, each employing channeled all-metal felloes, having an inclined flange on one side. Each rim is provided with a plurality of symmetrical-

ly arranged spaced depressions. These spaced depressions upon the rim substantially fill the space between rim and felloe and leave clearances between the depressions. It is the defendants' contention that the accused constructions do not infringe because the arcuate depressions on the rim serve as centering devices, and are not bearing members, and so follow the prior art rather than the teachings of Rubsam.

It must be conceded that the question of infringement is a somewhat close one. It appears, however, from the evidence that in the sample wheels submitted some of the so-called centering devices on the rim were in contact with the felloe, that others were separated by minute clearances ranging from twenty one-thousandth of an inch to fifty one-thousandth of an inch, and that other raised portions of the rim lightly engaged the felloe for about one-half an inch of surface and had minute clearances over the rest of their surfaces. The record seems clear that the defendants were taught their rim construction by Rubsam at the plant of the Jaxon Company. Moreover, the fact that the defendants chose to follow the patents and commercial devices made by Rubsam under the patent in locating the raised surfaces upon the rim, rather than Baker or any of the prior art patentees, would seem to indicate at least that the defendants were following the teachings of Rubsam as far as they deemed advisable in order to gain the benefit of Rubsam's idea without incurring the penalty of actually embodying it. There are other considerations also which are important. The record shows that the defendants' mechanics were instructed to secure a tight fit. It also appears that within the limits of tolerance employed by wheel manufacturers that the defendant's shop measurements might under high tolerance of rim and low tolerance of felloe result in minute clearances, but when there was high tolerance in the felloe and low tolerance in the rim the result would be a press fit. It would seem to me, therefore, that the line between infringement and noninfringement is so narrow that all of these considerations must weight the scales in the plaintiffs' favor upon that issue. The defendants in following Rubsam as far as they did when the prior art was open to them did so at their own risk, and they cannot now escape the penalty even though they have stepped but slightly over the line. I am of the opinion that the first three patents in suit, in so far as they are sued upon, are infringed by the four accused constructions of the defendant, and that the prayer of the bill in respect thereto ought to be granted.

One other issue remains to be disposed of. The plaintiffs, in addition to damages for infringement, seek to recover royalties under the license agreement for constructions made prior to its termination. It is contended that there being no diversity of citizenship between all of the plaintiffs and all of the defendants, and the claim for royalties not constituting a suit under the patent laws, the court has no jurisdiction to adjudicate it. It appears, however, that the Rubsam Corporation, which was incorporated on the 21st of November, 1924, acquired title to the first Rubsam patent in suit and all rights of action accrued and to accrue by virtue thereof before any of the infringing wheels were made. The Rubsam Corporation is a Delaware corporation, and there is proper diversity of citizenship between it and each of the defendants, and the other plaintiffs are not necessary and indispensable parties to the suit for royalties. I think, therefore, that the challenge to the jurisdiction of this court upon the royalty claim under the circumstances set forth is without merit.

A decree may be entered in favor of the plaintiffs in conformity with this memorandum, and in pursuance of the prayer of the bill of complaint.